## CHARLESTON.

### HUTCHINSON'S EX'X *v.* BOLTZ *et al.*

Submitted September 3, 1891.—Decided December 12, 1891.

1. FRAUDULENT CONVEYANCES — CONSIDERATION — BURDEN OF ROOF.

A party who is insolvent, and against whom several suits were pending, seeking to recover judgments for different amounts for which he is liable as indorser, files pleas in said suits, and obtains continuances thereof, and during the pendency of said suits said debtor conveys all of his real estate to his brother-in-law for the expressed consideration of four thousand dollars having previously disposed of all his personalty, but retains possession of said real estate, continuing to use and occupy it, so far as the record shows, without rendering any account, for five or six years after the date of said conveyance; at the expiration of which time said brother-in-law conveys said real estate to said debtor's wife for life, remainder to her children, providing therein that the land so conveyed should be free from any liability for the debts of her said husband, the consideration mentioned in said deed being also four thousand dollars; it appearing that the said brother-in-law at the date of said conveyance was only worth about eight hundred dollars, said debtor claiming that the entire consideration of four thousand dollars was paid by said brother-in-law at the date of said deed, and applied by him in payment of trust liens that he does not in any manner describe. In a controversy between the wife and the creditors of the husband as to their right to subject said real estate to the payment of debts contracted by the husband before said conveyance was made by him, *held*, that the burden of proving that the conveyance made by the husband to his brother-in-law was *bona fide* and for a valuable consideration rests upon the wife, and not upon the creditors to show the contrary.

2. FRAUDULENT CONVEYANCES—LIMITATION.

The limitation provided for in section 14, c. 104, Code, does not apply to a case where actual fraud is shown in making the conveyance of the property.

3. FRAUDULENT CONVEYANCES—BAR.

If the deed was in fact made with intent to hinder, delay, or defraud creditors, the statute will not bar a suit by the creditors to impeach the deed for fraud.

4 FRAUDULENT CONVEYANCES.

Fraud may be legally inferred from the facts and circumstan-

ces, where those facts and circumstances are such as to convince a reasonable man that the conveyance was made with intent to hinder, delay, or defraud creditors.

5. FRAUDULENT CONVEYANCES—HUSBAND AND WIFE—BURDEN OF PROOF.

Where a married woman claims real estate in opposition to the creditors of her husband, which has been conveyed to her either directly or indirectly from the husband, the burden of showing that it was paid for by her out of her separate estate rests upon her, and, in the absence of such proof, it will be presumed that the purchase-money was furnished by her husband.

*G. Baylor* and *F. V. Ayler*, for appellants.

*Flick & Westenhaver* and *Faulkner & Engles* for appellee, cited 23 W. Va. 499, 639; 22 Id. 585; 10 Id. 87, 321; 29 Id. 440; 30 Id. 203, 619; 32 Id. 34, 514, 515; 27 Id. 206, 447; 28 Id. 16; 32 Id. 101, 406; 11 Id. 122; 24 Id. 405, 730; 29 Id. 389, 395, 703, 708; 30 Id. 555, 443; 31 Id. 519; 22 Pa. St. 179; 17 W. Va. 717; 15 Id. 521; 28 Id. 33; 12 S. E. Rep. 828, 831; Code, c. 74; 3 Gratt. 34, 58; 27 W. Va. 697; Code, c. 65, s. 3.

ENGLISH, JUDGE :

This was a suit in equity brought by Helen M. Hutchinson, executrix of Samuel Hutchinson, deceased, against John H. Boltz and Rebecca Boltz, his wife, and Josiah Gruber and Emily V. Gruber, his wife, in the Circuit Court of Berkeley county, on the 3d day of October, 1879, for the purpose of setting aside two deeds of conveyance as being voluntary, and as having been executed with intent to hinder, delay, and defraud the creditors of said John H. Boltz, and to subject the real estate mentioned and described in said deeds of conveyance to the satisfaction of a judgment rendered at the May term, 1873, of said court against the defendant John H. Boltz for the sum of nine hundred and ninety seven dollars and fifty cents, with interest thereon from the 19th day of May, 1873, and the costs of suit, eleven dollars and sixty cents.

The plaintiff in her bill alleges that her testator obtained said judgment on the 2d day of June, 1873, in which several executions were issued, and returned, "No property found," and that said judgment was duly docketed in the

judgment-lien docket of the County Court of said county on the 11th day of June, 1873, and still remains wholly unpaid ; that said judgment was obtained under the following circumstances, and on the following facts :

In the year 1872 two suits were brought in said court by one E. M. Walker as indorser, against said John H. Boltz as first indorser, said testator as second indorser, the maker and other subsequent indorsers, on two negotiable promissory notes made by one George W. Reed, who was then and still is wholly insolvent, the one for three hundred and fifty dollars, dated August 31, 1871, and payable in six months after its date, the other for five hundred and fifty dollars, dated August 1, 1871, and payable twelve months after its date. To the suit brought on said first-named note the said John H. Boltz appeared at the August term, 1872, of said court, filed a plea of *nil debet*, and had the cause continued to the next term. To the suit brought on the other note he appeared at the October term, 1872, of said court, pleaded *nil debet* in that suit also, and had both cases continued till the next term, May, 1873, of said court. At the said May term he withdrew the pleas which he had filed in both cases, and suffered judgment to be taken in both cases without making any defence, and judgment was rendered at the May term, 1873, against said John H. Boltz, the testator, and other subsequent indorsers in both cases. The said Reed, having left this State before the commencement of said suits, and not having been served with process, was not a party to said judgments. Immediately upon the rendition of said judgments the said testator paid them to the said Walker, and forthwith proceeded by motion against the said John H. Boltz, as first indorser, for the money so paid by him as second indorser, in which proceeding said testator obtained said judgment of nine hundred and ninety seven dollars and fifty cents, with interest and costs as aforesaid, against the said John H. Boltz. At the time said notes were indorsed it was well known to the testator that the said Reed, the maker thereof, was wholly insolvent, and unable to pay the same, and it was only in consequence of the obligation of said Boltz as first indorser on said notes to be responsible to him as second indorser thereon,

and looking and trusting to the said Boltz alone, that he, the said testator, was induced to place his name upon the said notes as second indorser thereof. At that time the said John H. Boltz was in very good circumstances pecuniarily, being the owner in fee-simple of a valuable farm in said county of over two hundred and fifty acres of land, possessed of personal property exceeding in value the sum of one thousand five hundred dollars, and perfectly solvent, and amply-able to pay and discharge all his liabilities, including those assumed by him as indorser of said notes. Shortly before said judgments in favor of the testator were obtained against the said John H. Boltz, he, the said Boltz, put his personal property out of his hands, and disposed of the same, so that it could not be reached by *fieri facias;* and after the suits were brought by Walker as aforesaid, and before the term at which judgments therein were obtained, to wit, on the 22d day of January, 1873, he, the said Boltz, with intent thereby to delay, hinder and defraud his creditors, and more especially to defraud the said testator, did, together with the said Rebecca Boltz, his wife, execute a deed conveying, or purporting to convey, the said realty to the defendant Josiah Gruber, his brother-in-law, he, the said Gruber, being then fully aware of the said fraudulent intent of said Boltz, for the consideration therein named of four thousand dollars; and on the 21st day of March, 1879, the said defendant Josiah Gruber and Emily V. Gruber, his wife, with the like intent to delay, hinder, and defraud the creditors of said John H. Boltz, and more especially to defraud said testator, executed a deed conveying, or purporting to convey, said realty to his sister, the said Rebecca Boltz, wife of the said John H. Boltz, she also being then fully aware of the said fraudulent intent in the making of said conveyance, for the consideration as therein stated of four thousand dollars.

The plaintiff charges that the deed aforesaid, executed by said Boltz and wife to said Gruber, was made without any valuable consideration, the consideration mentioned in the deed being feigned and colorable merely, and that the deed aforesaid executed by said Gruber and wife to said Rebecca Boltz is not supported by any valuable considera-

tion paid by or moving from any person other than her husband, the said John H. Boltz; and she charges that both of said deeds are fraudulent and void as against her. That the said realty is the only source from which she can obtain satisfaction of the said judgment rendered in favor of the said testator; and she prays that said deeds may be declared null and void, and set aside, and said real estate may be subjected to the satisfaction of said judgment in favor of her testator. A copy of both of said deeds was exhibited with the plaintiff's bill, and it appears that said Josiah Gruber and wife, on the 21st of March, 1879, conveyed said real estate to Rebecca Boltz, wife of John H. Boltz, for life, remainder to her two children, William M. Boltz and Henrietta Anderson.

On the 21st day of December, 1883, the said Rebecca Boltz filed her demurrer to plaintiff's bill, and for cause of demurrer said that, if the deed from John H. Boltz and wife to Josiah Gruber be as alleged in the bill without any consideration in law, then, and in that event, said complainant ought not to maintain her suit against her, because she says five years have elapsed since the date of the said alleged voluntary conveyance. This demurrer was overruled, and thereupon the said John H. Boltz and Rebecca Boltz, his wife, filed their answer to the plaintiff's bill admitting that said testator obtained said judgment against said John H. Boltz as alleged for nine hundred and ninety seven dollars and fifty cents, with interest from the 19th day of May, 1873, and the costs, but stated; that at the time said judgment was obtained said John H. Boltz was wholly unable and without means to satisfy the same, and so remains. They deny that the said deed made by them to Josiah Gruber, one of the defendants, was made with intent to delay, hinder or defraud the creditors of said John H. Boltz, and more especially the plaintiff's testator, Samuel Hutchinson; and they deny that the same was made without any valuable consideration, or that the consideration named in said deed was colorable only; and they deny the allegation in said bill that the said deed from Josiah Gruber and Emily V. Gruber, his wife, to said Rebecca Boltz, is not supported by any valuable consideration paid

by or moving from the said Rebecca Boltz, nor by any valuable consideration paid by or moving from any person other than her said husband, John H. Boltz; and respondents say that said deed from John H. Boltz and wife to Josiah Gruber was made for the consideration therein named, and without any fraudulent intent whatever.

On the 14th day of September, 1889, the defendant John H. Boltz and Rebecca Boltz demurred to the plaintiff's bill for want of proper parties, to wit, the remainder-men named in Exhibit B, which demurrer was sustained, and leave was given to the plaintiff to file an amended bill, which was accordingly done at the December rules, 1889, which bill was taken for confessed, and set for hearing at the January rules, 1890.

Said amended bill made William M. Boltz, Henrietta Anderson, George W. Walker, administrator of Elias M. Walker, deceased, L. H. Martin, and Ezra Henning additional parties to those named in the original bill, and, after setting forth the same allegations as those contained in the original bill, the plaintiff alleged, by way of amendment, that, "after the said pretended sale and conveyance of the said realty to the said Josiah Gruber, no manifest change whatever was made in the management of said farm, but it was ostensibly cultivated and managed by the said John H. Boltz, without any supervision or direction whatever, and for his own benefit; and that after the conveyance was made by Josiah Gruber and wife to the said Rebecca Boltz, and at her death to her two children, William M. Boltz and Henrietta Anderson, there was no apparent change either in the ownership, management, or cultivation of the said farm, but it still continued in the possession and under the control and management of the said John H. Boltz, just as it had been for more than ten years prior to the last-mentioned conveyance; and the plaintiff charged that both the said conveyances were made without any valuable consideration paid by the grantees therein, or either of them, the making of the latter deed being only the completion of the original fraudulent intent, existing at the time of the making of the first deed, to place the property of the said John H. Boltz beyond the reach

of his creditors, and thus delay, hinder, and defraud them, which fraudulent intent was participated in by all the grantees, as well as grantors, in both of the said deeds at the time of their execution.

The plaintiff also alleges the death of Samuel Hutchinson, in 1873, leaving a will which was duly probated; that Helen M. Hutchinson, who was named as executrix therein, qualified as such; that afterwards she died, and Charles H. Miller was duly appointed administrator with the will annexed of said Samuel Hutchinson.

The plaintiff also says, by way of amendment, that on the 19th day of May, 1873, Elias M. Walker recovered a judgment in the said Circuit Court against the said John H. Boltz for one hundred and ten dollars and fifteen cents, with interest thereon from that date, and costs, twenty nine dollars and fifty cents, which judgment was docketed on the judgment-lien docket in the office of the clerk of the County Court of said county on the 3d day of July, 1873; that afterwards, in 1875, said Elias M. Walker died intestate, and George M. Walker was duly appointed his administrator, and obtained a revival by *scire facias* of said judgment in his favor; that on the 22d day of October, 1883, executions were issued on said judgment, and returned unsatisfied, and the said judgment still remains wholly unpaid, and is a lien on said tract of two hundred and fifty acres of land fraudulently attempted to be conveyed away by said John H. Boltz and wife as above stated; and that the defendant L. H. Martin recovered a judgment in the County Court of said county against the said John H. Boltz for one hundred and nineteen dollars and ninety eight cents with interest thereon from the date last aforesaid, and nine dollars and seventy five cents costs; that this judgment was obtained in an action brought by said Martin for the recovery of money which he had been compelled to pay as second indorser of a negotiable note made by one George Reed, on which said Boltz was first indorser, and which said action was pending before and at the time of the making of the said deed of conveyance by said John H. Boltz and wife to Josiah Gruber; and that on the 20th day of May, 1873, said Martin recovered a

judgment, also in the Circuit Court, against the said John H. Boltz for one hundred and eighty four dollars and fifty four cents, with interest thereon from the date last aforesaid, and the costs of suit, twelve dollars and forty cents; that this judgment was also obtained by the said Martin in an action brought by him for the recovery of money which he had been compelled to pay as second indorser of a negotiable promissory note made by one George Reed, on which said John H. Boltz was first indorser, which action was also pending before and at the time of the making of the said deed by said John H. Boltz and wife to the said Josiah Gruber, both of which judgments were duly docketed in the judgment-lien-docket in the office of the clerk of the County Court of said county, the former on the 24th day of April, 1873, and the latter on the 28th day of June, 1873, on each of which judgments two executions were issued, and returned, "no property found," and said judgments remain wholly unpaid, and are liens upon the said tract of two hundred and fifty acres of land fraudulently attempted to be conveyed away by the said John H. Boltz and wife, as above stated ; and that on the 23rd day of November, 1873, the defendant Ezra Henning recovered a judgment in said Circuit Court against the said John H. Boltz for one hundred and fifteen dollars and ninety six cents, with interest thereon from the date last aforesaid, and costs, twenty seven dollars and twenty five cents which judgment was obtained in an action brought by the said Henning for the recovery of money which he had been compelled to pay as second indorser of a negotiable promissory note made by one George Reed, on which said John H. Boltz was first indorser, dated August 31, 1871, and payable six months after its date, which judgment was duly docketed in the clerk's office of the County Court of said county, and three executions have been issued thereon, and placed in the hands of the sheriff of said county, but were only partially productive, the whole amount collected thereon being only ninety eight dollars, as of the date June 27, 1876, and, after deducting the sheriff's commissions, only ninety three dollars and ten cents was left to be credited as a payment on said judgment, leaving the

residue wholly unpaid, which is a lien on the said two hundred and fifty-acre tract of land fraudulently attempted to be conveyed by the said John H. Boltz and wife away beyond the reach of his creditors, as above stated; and the plaintiff prays that said deeds of conveyance may be declared null and void and set aside, and that said two hundred and fifty acres of land may be subjected to the plaintiff's lien thereon, as well as the liens of the said judgments of the defendants, with their interest and costs.

To this amended bill the defendant John H. Boltz demurred generally, and on the 9th day of April, 1890, said demurrer, being argued by counsel and considered by the court, was overruled, and a rule was awarded requiring the said John H. Boltz to answer by the 19th day of April.

On the 19th day of April, 1890, the defendants John H. Boltz, Rebecca Boltz, Josiah Gruber, and Emily Gruber, his wife, filed their answer to said amended bill, admitting that plaintiff's testator obtained said judgment against respondent J. H. Boltz in the manner and form therein alleged, but they state that at the time said judgment was obtained, and long before, respondent John H. Boltz was wholly unable and without means to satisfy the same, and so remains; that at the time said judgment was obtained, and long before, the personal property of respondent John H. Boltz had been entirely consumed by executions in the hands of the sheriff against him for the satisfaction of judgments against him as security for other parties; and that his real estate was covered to its full value by deed of trust for money borrowed for the purpose of paying his debts; and that when he sold his realty, as alleged in the bill, to the respondent Josiah Gruber, he sold it to him subject to the said deeds of trust; and that the entire amount of four thousand dollars he was paid for the realty went to the satisfaction of liens in said deeds of trust, all of which were prior to the judgment of plaintiff's testator; and that there were other liens prior to that of the said testator which have never been satisfied, owing to the fact that respondent John H. Boltz has had nothing out of which to satisfy them.

Respondents deny that said deed from John H. Boltz

and Rebecca Boltz to Josiah Gruber was made with any intent to delay, hinder, or defraud the creditors of respondent John H. Boltz, and more especially the plaintiff's testator, as alleged in the bill.

And they deny that said deed was made without any valuable consideration, or that the consideration named in said deed was colorable only.

They also deny that the said deed from Josiah Gruber and Emily V. Gruber, his wife, to Rebecca Boltz and children, is not supported by any valuable consideration paid by or moving from any person other than her said husband, John H. Boltz, but they aver that both of said deeds were made for the consideration therein named, and without any fraudulent intent whatever; and on the 21st day of April, 1890, the defendants William M. Boltz and Henrietta Anderson filed their plea to said bill in which they plead and aver that as to them the deed to Rebecca Boltz and themselves by Josiah Gruber and wife, as alleged in the bill, was a voluntary one, and that more than five years have elapsed since said voluntary conveyance; therefore the plaintiff ought not to maintain this suit against them, and they pray to be hence dismissed, with their costs; which plea was duly sworn to.

No depositions were taken by the defendants, so far as appears from the record in this cause, and on the 22nd day of April, 1890, the cause was heard and the court decreed that the defendant John H. Boltz was indebted to the plaintiff Charles H. Miller, administrator *de bonis non* of Samuel Hutchinson, deceased, in the sum of nine hundred and ninety seven dollars and fifty cents with interest thereon from the 19th day of May, 1873, sixteen dollars and sixty cents costs; and in like manner proceeded to find the amount of indebtedness of said John H. Boltz to George W. Walker, administrator of Elias M. Walker, deceased, to L. H. Martin, and to Ezra Henning, and ascertained the priority of said debts; and held that the deed made by John H. Boltz and Rebecca, his wife, dated January 22, 1873, purporting to convey to the defendant Josiah Gruber two tracts of land in the county of Berkeley and state of West Virginia, and which said Josiah Gruber and Emily V. Gruber his wife,

by their deed dated March 21, 1879, conveyed, or pretended to convey, to the defendant Rebecca Boltz, the wife of said Johh H. Boltz, for her life, with remainder to the defendants William M. Boltz and Henrietta Anderson, in fee, was fraudulent as to the said mentioned debts of John H. Boltz, all of which were contracted and existing at and before the date of the said deeds, and is void as to them; and it not appearing that any valuable consideration was paid by the said Rebecca Boltz, or by any person other than her said husband, for said conveyance, it was therefore decreed that the said deed made by said John H. Boltz and Rebecca, his wife, to said Josiah Gruber, be, and the same was thereby, cancelled, annulled, and set aside as to the said debts; and it was further ordered that unless the said John H. Boltz, Rebecca Boltz, Josiah Gruber, Emily Gruber, William M. Boltz, and Henrietta Anderson, or one or more of them, or some person for them, should pay off and discharge said debts and costs of said suit within thirty days from the adjournment of said court, certain special commissioners therein appointed were directed to advertise and sell said tracts of land upon the terms and in the manner therein directed; and from this decree Rebecca Boltz, Josiah Gruber, William M. Boltz, and Henrietta Anderson applied for and obtained this appeal.

In considering this case, the first question which presents itself for our determination is whether the deed of conveyance made by John H. Boltz and Rebecca, his wife, to Josiah Gruber, for the consideration of four thousand dollars expressed on the face of the deed, was, under the circumstances surrounding the transactions, a fair and honest conveyance of the land therein described, or was it fraudulent as to the plaintiff and the other existing creditors of said grantor?

It will be observed George W. Reed executed the note for three hundred and fifty dollars, on which John H. Boltz was first indorser and testator second indorser, on the 31st of August, 1871, payable six months after date, and the five hundred and fifty dollar note on the 1st of August, 1871, payable twelve months after its date, and on that note John H. Boltz was the first and Hutchinson the sec-

ond indorser. When suit was brought on these notes, said Boltz interposed the plea of *nil debit*, and obtained a continuance until the May term, 1873, when he withdrew his pleas, and suffered judgment to be taken ; and while these suits were pending, to wit, on the 22d day of January, 1873, the said John H. Boltz conveyed all of his real estate to his brother-in-law, Josiah Gruber, for the pretended consideration of four thousand dollars.

It is alleged in the amended bill, and undenied in the answer, that other judgments were obtained against said John H. Boltz in May, 1873, in said Circuit Court, one in favor of Elias M. Walker for one hundred and ten dollars and fifteen cents and costs, twenty nine dollars and fifty cents, and one in the county court in May, 1873, in favor of L. H. Martin, for one hundred and nineteen dollars and ninety eight cents, and costs, nine dollars and seventy five cents, and another in favor of said Martin in the Circuit Court of said county for one hundred and eighty four dollars and fifty four cents, on the 20th of May, 1873, and costs, twelve dollars and forty cents, which actions were pending at the time said conveyance was made.

It was further alleged in the plaintiff's bill that said John H. Boltz was possessed of personal property exceeding in value one thousand five hundred dollars, and was perfectly solvent, and was amply able to pay and discharge all of his liabilities, including those assumed by him as indorser of said notes; but that shortly before the said judgments were obtained he put said property out of his hands, and disposed of the same, so that an execution against him would be unavailing.

It also appears that Ezra Henning, who had to pay a note made by George Reed dated the 31st of August, 1871, and payable six months after its date, obtained a judgment against said John H. Boltz on the 24th day of November, 1873, as the first indorser on said note ; that he issued several executions on said judgment, one dated December 22, 1873, and after repeated efforts, was only able to collect ninety three dollars and ten cents.

It is true that said John H. Boltz in his answer says that at the time said judgment was obtained, and long before, he

was unable and without means to satisfy the same, and so remains. He does not, however, deny the allegation that he put his property out of his hands, but claims his property was consumed by executions in the hands of the sheriff against him on judgments obtained against him as security for other parties; yet he does not show in whose favor said executions were, and the only portion of any one that appears in the record to have been collected from him is the ninety three dollars and ten cents, which was collected on Ezra Henning's judgment; and, in attempting to explain what became of the four thousand dollars he claims to have received from his brother-in-law, Josiah Gruber (who, as the record shows, was unable to pay one thousand dollars) he says he sold said land to Gruber subject to deeds of trust which were prior to the judgment lien of plaintiff, and the whole of said sum was absorbed in paying those liens; but he does not mention the names of the *cestui que trust* in any of said deeds; neither does he give their dates, or the time they were recorded, which could have been easily done if any such trusts existed, and would have been the best evidence that the plaintiff was not entitled to the proceeds of said land to satisfy his lien, but that they had been applied to an older and superior lien.

It appears that the amount of personal property with which said Josiah Gruber was assessed for the year 1873 was three hundred dollars, and for the year 1872 it was one hundred and fifty five dollars, and yet the defendant Boltz says he paid the four thousand dollars down for the land, and he used it in paying off these deeds of trust. And, notwithstanding this large amount of money was paid down by said Gruber, no change was made in the possession or management of the farm. John H. Boltz was allowed to remain quietly in the use and enjoyment of the farm until his wife raised four thousand dollars in some way six years afterwards, and purchased the land back, and still said John H. Boltz remained in possession, and used and enjoyed said tract of land; and when said Josiah Gruber and wife reconvey said land, or rather convey it to Rebecca Boltz, they appear still to keep a watchful eye on

the debts of John H. Boltz, and seek to shield said land from the payment of any portion of them, for in the deed we find this clause: "To have and to hold the same for her use and benefit free from any liability for the debts of her said husband, John H. Boltz, which have been or may hereafter be contracted by the said John H. Boltz in any manner whatsoever, and at her death the same to go to her two children, to wit, William M. Boltz and Henrietta Anderson, but with the full understanding that the said Rebecca Boltz is to have the full and free use and control of said realty during her natural life, with the right to convey the same, with the consent of said children, should she have desire to do so in future, should said children still survive; but, in the event of the death of either of said children, then she is to have the absolute right to convey said realty free from the control of the heirs of either of said children who have died." John H. Boltz, if he had dictated this clause could not have worded it more to his satisfaction; for, if valid, it shields the property from his debts and gives him the use and enjoyment of the property during the life of his wife. Let us now look at these facts and circumstances in the light of the rulings of this Court in reference to conveyances made under similar circumstances.

In the case of *Herzog* v. *Weiler*, 24 W. Va. 199, the facts were as follows: An insolvent husband transferred to his wife's brother by deed, for an alleged valuable consideration, all of his personal property. Soon thereafter the said brother transferred the said property to another brother, and the latter immediately transferred it to his sister, the wife of said insolvent husband, as a gift in consideration of fraternal affection. In a controversy between the wife and the creditors of the husband as to the right to have said property subjected to the payment of debts contracted by the husband before the transfer by him, the Court held: "The burden of proving that the transfer by the husband to the brother was *bona fide*, and for a valuable consideration, rests upon the wife, and not upon the creditors." SNYDER, J., in delivering the opinion of the Court in that case, said: "The burden of proving such consideration would have

been upon her, and not upon the creditors of her husband. Can the fact, then, that the property has been conveyed by the husband to a third party, who shortly thereafter conveyed it to the wife as a gift, relieve her of such burden, and place it upon the creditor? Will she not still have to prove that either she or her donor, or some one under whom her title is derived, paid a valuable consideration for the property? Of course, if she can show that the person who gave her the property had a valid title to it as against the creditors of her husband, she would be entitled to hold it against such creditors; but, in order to do so, it seems to me to be unquestionable that she must prove to the satisfaction of the court that either she or some person other than her husband, under whom she claims title, paid a valuable consideration for the property. To hold that a simple change in the form of the conveyance from the husband to the wife would shift the burden of proof would be most mischevious and unprecedented."

In the case under consideration the defendants John H. Boltz, Rebecca Boltz, Josiah Gruber, and Emily V. Gruber aver in their answer to the plaintiff's amended bill that "the said deeds from John H. Boltz and wife to Josiah Gruber, and Josiah Gruber and Emily V. Gruber, his wife, to Rebecca Boltz and children, were made for the consideration therein named, to wit, four thousand dollars, and without any fraudulent intent whatever." This answer, however, was replied to generally, and the defendants have taken no proof whatever to support said averment.

In the case of *Seitz* v. *Mitchell*, 94 U. S. 580, point 2 of syllabus, the court held that the purchase of real or personal property, made during coverture by the wife of an insolvent debtor, are justly regarded with suspicion. She can not prevail in contests between his creditors and her, involving their right to subject property so acquired to the payment of his debts, unless the presumption that it was not paid for out of her separate estate be overcome by affirmative proof."

In *Walker* v. *Reamy*, 36 Pa. St. 410, it was held that, "where a married woman claims property in opposition to her husband's creditors, which has been purchased since

the marriage, she must show affirmatively that she has received money or other property 'by will, descent, conveyance, or otherwise,' and invested it in the property claimed." See, also, *Maxwell* v. *Hanshaw*, 24 W. Va. 405. See, also, *Core* v. *Cunningham*, 27 W. Va. 206, where it is held:

"Transfers of property, either directly or indirectly, by an insolvent husband to his wife during coverture, are justly regarded with suspicion; and unless it clearly appears that the consideration was paid from the separate estate of the wife, or by some one for her, out of means not derived, either directly or remotely, from the husband, such transfer will be held fraudulent and void as to the creditors of the husband;" * * * "a conveyance of land made by a third person to a wife, which is fraudulent in fact, will be held void as to subsequent, as well as existing, creditors of the husband."

Numerous other cases, holding this same doctrine, might be cited from the decisions of this Court, but these are deemed sufficient to show the rule established in this State.

Among the badges of fraud existing in this case we may call attention to the fact that the said John H. Boltz remained in possession of the land after the pretended sale to his brother-in-law, and, so far as the record disc'oses, so remained rent free, and used and enjoyed the property as his own. This is enumerated among the badges of fraud in the case of *Livesay* v. *Beard*, 22 W. Va. 585, where it is held that "fraud may be legally inferred from the facts and circumstances of the case, when the facts and circumstances are of such a character as to reasonably lead to the conclusion that the conveyance was made with the intent to hinder, delay, and defraud creditors;" also that "where, after an absolute conveyance of real estate by a debtor in failing circumstances, he remains in possession of the land without contract, and without accounting for the use of the land, these facts are evidence of fraudulent intent in such conveyance." See *Knight* v. *Capito*, 23 W. Va. 645; also, Bump. Fraud. Conv. 64, where the author says: "The want of possession is, however, a strong badge of fraud. The property is placed in the purchaser, the possession contin-

ues in the debtor, and by that means creditors, perceiving no visible diminution of the debtor's effects, rest satisfied, and take no measures to secure their debts, until, perhaps, the whole estate of the debtor is exhausted" *etc.* See, also, *Himan* v. *Thorn*, 32 W. Va. 517 (9 S. E. Rep. 930.)

In the case at bar the defendant John H. Boltz in his answer evidently misstates the facts in regard to the payment of the purchase-money to him by Josiah Gruber, and as to the manner in which said proceeds were applied and disposed of by him. It would not be reasonable to suppose that a man would pay out four thousand dollars for a tract of land, and allow his vendor to occupy and use it for four or five years; and this circumstance alone points strongly to the conclusion that no consideration was paid by said Gruber for said land, and, taken in connection with the fact that several suits were pending against said Boltz for considerable sums at the time the conveyance was made, we can reach no other conclusion than that said conveyance to Josiah Gruber was fraudulent as to the creditors of said J. II. Boltz. The remainder-men, however, file a plea in which they claim that the deed made by Josiah Gruber and wife to Rebecca Boltz and themselves was a voluntary one, and that more than five years had elapsed since said voluntary conveyance, and for that reason the plaintiff ought not to maintain said suit *etc.* Having, however, reached the conclusion that the conveyance made by John H. Boltz to Josiah Gruber was fraudulent as to the creditors of said Boltz, and the circumstances also showing that said Gruber was fully cognizant of the fact, we have no difficulty in disposing of said plea, as we find in *Hunter's Ex'rs* v. *Hunter*, 10 W. Va. 321, point 4 of the syllabus, that "the limitations provided for in said section 14 of chapter 104 of the Code do not apply to a case of actual fraud," and we can arrive at no other conclusion, from all the circumstances of the case, viewed in the light of the authorities bearing thereon, than that these conveyances were the result of a fraudulent scheme on the part of John H. Boltz and his brother-in-law, Josiah Gruber, to shield said real estate from the creditors of said Boltz.

It is also assigned as error that, if the two deeds are set

aside, then Mrs. Boltz has a contingent dower-right in the property, and, being a party to the suit, provision should have been made in the decree of sale therefor. It is a sufficient reply to this to say that, during the lifetime of John H. Boltz, the said Rebecca Boltz is not entitled to dower, and should he outlive her such right would never accrue; and we find it said in Scribner on Dower (volume 2, p. 259, note 1, citing Rop. Husb. & Wife, 562) that where the wife of a debtor joins with him in the execution of a fraudulent conveyance of his real property to a third person, who reconveys to her, and the conveyances are set aside at the suit of a creditor, she is not entitled to have dower reserved to her by the judgment. We, however, do not hold that by such a conveyance she would release her right of dower, as we also find that in Barton's Chancery Practice (volume 1, p. 513) the author says: "Upon the same principle it has been held that the right of a wife to dower was not released by her joining with her husband in a deed which was afterwards set aside as fraudulent and void against creditors;" citing *Maloney* v. *Horan*, 49 N. Y. 111; *Ridgway* v. *Masting*, 23 Ohio St. 294; *Richardson* v. *Wyman*, 62 Me. 280.

For these reasons the decree complained of must be affirmed, with costs and damages to the appellee.

AFFIRMED.