# WHEELING.

ROOT-TEA-NA-HERB CO. *v.* RIGHTMIRE *et al.*

## Decided June 12, 1900.

1. PETITION—*Appearance by Demurrer—Waiver.*

   Where a party files his petition, in the nature of an original bill in a chancery suit, praying to be made a party plaintiff, and that the defendants to the suit, being named in the petition, be made defendants thereto, and such defendants appear to said petition and demur, and demurrer is overruled, and on the record waive their right to answer or further plead thereto, it is not error to proceed upon said petition in the cause without process issued thereon; the waiver of right to answer or further plead being, in effect, a waiver of process. (p. 225).

2. BONA FIDE PURCHASER FOR VALUE—*Protected.*

   Under chapter 74, Code, a *bona fide* purchaser for valuable consideration, who had no notice of the fraudulent intent of his immediate grantor, or of the fraud rendering void the title of such grantor, is protected. (p. 231).

3. TRUST DEED—*Power of Court to Change.*

   E. V. R., a married woman living with her husband, purchased and had conveyed to her a house and lot. She borrowed from a building and loan association five hundred dollars, which she used principally in paying for and improving the property, and, together with her husband, executed a deed of trust on the property to secure the loan, which was evidenced by bond, and payable in monthly installments. Shortly afterwards judgment creditors of the husband, of whose claims the said loan association had no notice at the time of the loan, instituted a suit to set aside the conveyance to E. V. R., as being in fraud of their rights, and succeeded in setting it aside as to their judgments. *Held,* the deed of trust was the prior lien, and, the court having no power to change the terms and conditions of the trust as to the maturity of the loan secured, it could only decree the sale of the property, subject to the trust debt to satisfy said judgments. (p. 231).

Appeal from Circuit Court, Tucker County.

Bill by the Root-Tea-Na-Herb Company against Emma V. Rightmire and others. Decree for plaintiff. Defendants appeal.

*Modified.*

W. B. MAXWELL and W. G. CONLEY, for appellants.

J. HOP WOODS and A. B. PARSONS, for appellee.

MCWHORTER, PRESIDENT:

By deed dated October 5, 1894, N. E. Canfield and her husband, J. C. Canfield, conveyed to Emma V. Rightmire certain lots of land in the town of Parsons in consideration of seven hundred dollars, of which three hundred and eighty dollars was paid in cash, and three hundred and twenty dollars to be paid to A. Currence by said Rightmire; said Canfields retaining a lien on said property to secure the payment of said money to Currence. On the 14th day of January, 1895, said Rightmire and R. F. Rightmire, her husband, executed a deed of trust to J. C. Stoddard and A. C. Dubois, trustees, on said property, to secure to the Washington National Building and Loan Association the payment of five hundred dollars borrowed from said association, which money so borrowed was used in paying off the Currence lien, and on debts made for work and material performed and furnished in improvements on the property, except eighty-four dollars and eighty-five cents paid to Mrs. Rightmire, and seven dollars and fifty cents to the local attorney of said association. At the February rules, 1896, Root-Tea-Na-Herb Company, a corporation, filed its bill in the circuit court of Tucker County, setting up a judgment for four hundred and seventeen dollars and thirty-two cents obtained on the law side of the same court on the 27th of November, 1895, against said R. F. Rightmire; alleging that said judgment was recovered on notes of said Rightmire dated May 17, 1894, given under a purchase of goods made in October, 1893, and alleging that the purchase of the property was made from Canfield by said R. F. Rightmire, and the deed procured by him fraudulently to be made to Emma V. Rightmire, his wife, for the purpose of hindering, delaying, and defrauding his creditors, and especially the plaintiff in the collection of its said debt; that said Emma had full notice and knowledge of the said fraudu-

lent intent and purpose on the part of her husband, and participated in the fraud; that she had no separate estate or property of any kind, and the property was paid for wholly by her said husband, except what was paid out of the money so borrowed from the said Washington Building and Loan Association; that said R. F. Rightmire was indebted to other creditors in large amounts of money, and it was his object and purpose to defraud them, as well as plaintiff, in having said deed made to his wife, said Emma V. Rightmire,—and prayed that said deed of Canfields to Emma V. Rightmire be set aside and annulled, as having been made in fraud of plaintiff's rights; that said property be sold to satisfy its said debt; that the true amount yet due the said building and loan association be ascertained, etc.; and for general and special relief. Emma V. Rightmire filed her answer, denying that her husband had paid any part of the puchase money for said property, but claiming that the property was purchased, paid for, and improved by her with the money she borrowed from the building association, and with the help of her two sons, and that she still owed said association, except what she had paid on the dues, etc., and owed the Union Manufacturing Company, a corporation, for materials for the improvements, and denied all fraud and knowledge of fraud and averred that the amount due the Union Manufacturing Company was agreed to be paid in payments of ten dollars per month. At the December rules, 1896, the Union Manufacturing Company filed its bill to enforce its mechanic's lien against said property for materials furnished, claiming a balance of two hundred and sixty-one dollars and twenty-five cents, and making the parties to the suit of Root-Tea-Na-Herb Company parties defendant, and exhibiting its statement and account of its said lien, alleging that it furnished the materials charged for the improvements upon said property; that, at the time it so furnished the materials for which it has its lien, it had no intimation that there was any such claim as that set up by the plaintiff in the other suit; and that, if the Root-Tea-Na-Herb Company should succeed in setting aside the conveyance as to its claim, the said mechanic's lien should be first paid. On the 13th of March, 1897, Samuel V. Woods, by leave of court, filed his petition praying to be made a party plaintiff in case of Root-Tea-Na-Herb Company, and making all the parties to said suit, named in the caption of his petition, parties there-

to; setting up a judgment recovered in the circuit court of Barbour County on the 4th of April, 1894, against R. F. Rightmire, for one hundred and thirty dollars and three cents, with interest from that date and costs, three dollars and seventy-five cents, and attacking the said deed of October 5, 1894, from Canfields to Emma Rightmire, as fraudulent and void as to his said judgment, because of the fact that said property was purchased and paid for by said R. F. Rightmire, and, for the purpose of hindering, delaying, and defrauding his creditors (especially petitioner), he had procured the deed for said property to be made to his wife, said Emma V. Rightmire, and alleging that the trust deed of January 14, 1895, to secure said building and loan association (the said R. F. Rightmire being then insolvent) operated, by virtue of section 2, chapter 74, Code, as a security for all the creditors of said R. F. Rightmire, if the property therein conveyed was his property, and if said deed of the Canfields was made to hinder, delay, and defraud petitioner and other creditors of said R. F. Rightmire, prior existing liens, like the lien of petitioner, attached, and are so chargeable therein upon a judicial ascertainment and judgment of the fact; prayed to be admitted as a co-plaintiff in said cause, and made the same charges and objections of fraud in respect to said deed dated October 5, 1894, a part of his petition, and that the pleadings and proofs therein, in so far as applicable, might be read and considered on the hearing of his petition; that his judgment be decreed to be the first lien upon said property, as the property of R. F. Rightmire; that said deed of October 5, 1894, be held to be void as to creditors assailing the same, and charged with the payment of such creditors according to their respective rights and equities, and, if proper to do so, that said trust debt might be ratably paid, only, as provided for under said section 2; that the cause be referred to a commissioner, etc., and that the parties named in the caption be made parties defendants, and process issue, etc., and for general and special relief. And the defendants named in said petition appeared and demurred to said petition, in which petitioner joined, and, no grounds being assigned, the demurrer was overruled, and the defendants, and each of them, waived their right to answer or further plead to said petition. The cause was brought on to be heard upon the bill taken for confessed as to R. F. Rightmire, the separate answer of E. V. Rightmire, general replication thereto, etc.,

upon depositions of witnesses, and upon said petition; and the court was of opinion, and so decreed, that the deed from N. E. Canfield to E. V. Rightmire, of October 5, 1894, was taken in the name of E. V. Rightmire for the purpose of hindering, delaying, and defrauding plaintiff and petitioner Woods in the collection of their debts, and set the same aside, and decreed that tne land conveyed thereby was liable to be sold to satisfy said debts, and referred the cause to a commissioner, to ascertain the condition of the title to said property and the liens thereon, their amounts and priorties, and to whom owing, giving to the trust debt due the Washington Building and Loan Association its proper priority, just as though the said deed of October 5th had not been set aside as to plaintiff's debt, but subject to the opinion of the court to be thereafter rendered upon the question of law and fact raised in respect thereto in the allegations of said petition, and to report the annual rental value of said property, and any other pertinent matter, etc. On the 19th day of June, 1897, the Washington Building and Loan Association tendered its answer, showing amount due on its debt on 12th June, 1897, to be four hundred and twenty-eight dollars and sixty-five cents; that its deed of trust is the first lien on said property; that, in case the deed of October 5th should be held to be fraudulant, Woods' lien would be fourth in priority; denying the fraudulency of said deed, and insisting that, if the property should be sold, it must be sold subject to the deed of trust of respondent, on the terms set forth in the deed of trust. The suits of Root-Tea-Na-Herb Company and of Union Manufacturing Company against Rightmires and others were consolidated. The commissioner filed his report. Emma V. Rightmire excepted to the original report, and asked that the alternate report made at her instance, be affirmed, allowing to her the sum of eighty-nine dollars and ten cents paid by her to the building and loan association, which should be second in priority to the lien of the association, and seventy-five dollars paid by her on the mechanic's lien, which should have the same priority as the original mechanic's lien. The Washington Building and Loan Association excepted to the report because it says the evidence shows clearly that there was due it on its claim four hundred and twenty-eight dollars and sixty-five cents as of June 12, 1897, while the commissioner allowed a less amount. And S. V. Woods excepted because he

was not given his proper priority; that the deed of October 5, 1894, to Emma V. Rightmire being set aside restored the property to R. F. Rightmire, when his judgment would take precedence over the trust deed, over the Root-Tea-Na-Herb Company's judgment, and over the mechanic's lien debt reported as to the lots, but not as against the building constructed on the lots.

The cause was finally heard on the 4th day of December, 1897,    The court overruled all the exceptions to the report of the commissioner, and confirmed the report, and ascertained the first lien to be that of the Washington Building and Loan Association, for four hundred and twenty-four dollars and seventy-one cents, the second lien, a balance of one hundred and ninety-nine dollars and seventy-three cents due on the mechanic's lien of the Union Manufacturing Company; the third, the judgment of Root-Tea-Na-Herb Company for four hundred and ninety-five dollars and seventeen cents; and the fourth lien, the judgment of Samuel V. Woods for one hundred and fifty-eight dolars and seventy-six cents; with interest on each of said sums from June 12, 1897,—and decreed the sale of the property to satisfy the same, if not paid within thirty days from date of the decree.

Defendant Emma V. Rightmire appealed from said decree, assigning several errors: First, that the court erred in considering Exhibit J with the bill of Root-Tea-Na-Herb Company, because the same was not a proper paper for consideration of the court in ascertaining the solvency or insolvency of the defendant R. F. Rightmire. This paper was simply the alleged report of the Bradstreet Commercial Agency touching the commercial standing of the said defendant R. F. Rightmire, dated Cleveland, October 16, 1893, made an exhibit with plaintiff's bill.    There was no exception to the consideration of it, and I am unable to see how it could, in any event, have influenced the mind of the court prejudicially to the rights or interests of the appellant.

The second, third, and fourth assignments all refer to the petition of Samuel V. Woods: First, that it was error to permit the petition to be filed without process against the principal defendant, R. F. Rightmire; second, in not remanding the same to rules as to said defendant, as he was never represented by counsel in the case, as shown by the record, and never had a day to answer the allegations of said petition; and, third, in

decreeing the debt due to petitioner, Woods, without first giving said R. F. Rightmire a time to appear, and a day to answer the allegations of the petition. The record shows that on the day the petition was filed, praying "for process against the defendants named therein, and thereupon the said defendants, by their counsel, W. B. Maxwell and Lipscomb & Lipscomb, appeared and demurred thereto, and this petitioner joined in said demurrer, and, no grounds being assigned in support thereof, the same is overruled; and thereupon the said defendants, and each of them, waived their right now to answer, or further plead to said petition," etc. This petition distinctly makes R. F. Rightmire a defendant thereto, and "the defendants named therein appeared by counsel" and demurred, and they, and each of them, waived their right to answer or further plead to said petition. The object of process is to secure the appearance of the defendants in court. When that is done by general appearance, the function of the process is accomplished; and, unless there is some ruling of the court touching the validity of the process or return of service, the same is not made or considered a part of the record. A defendant cannot voluntarily appear and demur to a petition, and waive his right to further plead or answer thereto, and then take advantage of the fact that no process issued against him.

The fifth assignment is that "the court erred in setting aside the deed of N. E. Canfield to E. V. Rightmire, dated October 5, 1894, as fraudulent and void as to the creditors assailing it." "In case of a purchase by a wife during coverture, the burden is upon her to prove distinctly that she paid for the thing purchased with funds not furnished by her husband. Evidence that she purchased amounts to nothing unless it is accompanied by clear and full proof that she paid for it with her own separate funds. In the absence of such proof, the presumption is that her husband furnished the means of payment." *Rose* v. *Brown,* 11 W. Va. 122; *Herzog* v. *Weiler,* 20 W. Va. 199; *McMasters* v. *Edgar,* 22 W. Va. 673; *Stockdale* v. *Harris,* 23 W. Va. 499; *Seitz* v. *Mitchell,* 94 U. S. 580, 24 L. Ed. 179; *Hutchinson's Ex'r* v. *Boltz,* 36 W. Va. 754, (14 S. E. 267); *Brooks* v. *Applegate,* 37 W. Va. 373, (16 S. E. 585). It does not appear that Emma V. Rightmire had any separate estate. All that she paid on account of the property was a part of what she borrowed from the building and loan association, the team

of horses she got from her husband, and some little help she got from her sons, who worked in the tannery; and, in accounting for the disbursement of the money she borrowed from the loan association, in her testimony she says: "I paid to different parties,—Mr. Currence, Mr. Gibson; and I paid some money back to my husband, I owed him." How much she paid her husband, or for what she owed him,—whether for the team of horses, or money advanced by him on the property, or for other purposes, —does not appear. In her examination in chief, when asked to "state how you purchased the property in controversy, and whether or not any of the money or property of R. F. Rightmire has gone into said property," she answered: "I bought the property of N. E. Canfield, and I procured a loan from the Washington National Building and Loan Association. I kept the dues paid to said loan association, with my own money. None of R. F. Rightmire's money or property has ever gone into this property." This is her whole testimony in chief. The court did not err in setting aside said deed of October 5, 1894, from N. E. Canfield to E. V. Rightmire, as to plaintiff's and petitioner's claims.

The sixth assignment is "that the court erred in decreeing the mechanic's lien of the Union Manufacturing Company, held by assignment by Ruth M. Ryder at the date of final order, to be a lien upon the house and lot of E. V. Rightmire, because the account filed with said lien was never sworn to by any person for said corporation;" and, as to this assignment, counsel for plaintiff Root-Tea-Na-Herb Company says there is some confusion as to whether or not there has been a compliance with the statute as to verifying the account claimed to be a mechanic's lien, but thinks "the court will probably conclude that the affidavit shown was sufficient. However, there is a fatal defect in this mechanic's lien, to wit, it is not shown on the face of the lien, or in the bill of the Union Manufacturing Company, or anywhere in the cause, that the claimant of the lien ever filed an account, verified by affidavit, with Mrs. Rightmire, within thirty-five days after furnishing the material, as required by statute, and for that reason the lien ceased to exist. And this appellee now assigns said error, and which is covered by the last exception of Mr. Woods. Code 1891, chapter 75, section 3." As to appellant's said assignment, the Union Manufacturing Company began November 20, 1895, furnishing material under contract

made directly with E. V. Rightmire, the owner of the property, and continued until March 24, 1896, when it ceased to furnish the same. On the 18th day of May, 1896, J. H. Ryder, manager of said company, filed with the clerk of the county court of Tucker County such statement and account under his oath as is required by section 4, chapter 75, Code, giving in said statement a sufficient description of the property to be charged with the lien, and the owner's name, and seems to have in all respects complied with the statute. As to the appellee's assignment, the material having been furnished to the owner under a contract made directly with the owner, is not affected by section 3, but the lien is created and completed under sections 2 and 4, and was properly filed within the time required by section 4.

Assignments seven, eight and nine refer to the exceptions of appellant to the commissioner's report. Appellant excepts to the commissioner's report, but points out no error in the report, except by inference, in claiming that she ought to be allowed the payments made, aggregating eighty-nine dollars and ten cents, on account of the loan from the building and loan association, and seventy-five dollars on account of the mechanic's lien of the Union Manufacturing Company, and subrogated to the rights of such creditors. The deed was set aside only as to the debts of plaintiff and petitioner, and the payments made by her, for which she claims the right of substitution, were upon her own debts, made and created by herself in the purchase and improvement of said property, and she will have the benefit of such payments. Petitioner, Woods, insists that, R. F. Rightmire being insolvent when the property was purchased, and the property being his, the deed of trust given to secure the building and loan association operated to create a lien, as of that priority and date, for the ratable benefit of all his then existing creditors, and in support of this proposition cites *Refining Co.* v. *Quinn,* 39 W. Va. 538, (20 S. E. 576), and *Kurner* v. *O'Neil,* 39 W. Va. 515, (20 S. E. 589). These authorities cannot apply, as against the claim of the Washington National Building and Loan Association, because it stands in relation of purchaser of the property from Mrs. E. V. Rightmire, who held the legal title, and there is no allegation in any of the pleadings, nor does it otherwise appear in the record, that it had notice either of any rights of R. F. Rightmire in said property, or of the claims of either plaintiff or petitioner. Neither of their judgments had been

recorded, and there is nothing in the record to show that the *bona fides* of said deed of trust was in any way questioned by any one. "Under our statute against fraudulent conveyances, etc., (Code 1891, chapter 74), a *bona fide* purchaser for valuable consideration, who had no notice of the fraudulent intent of his immediate grantor, or of the fraud rendering void the title of such grantor, is protected." Bump, Fraud. Conv. ss. 304, 497, 499; *Blackshire* v. *Petit,* 35 W. Va. 547, (14 S. E. 133); *Goshorn's Ex'r* v. *Snodgrass,* 17 W. Va. 717. It is claimed by the trust creditor, the building and loan association, that its trust deed is the first lien upon the property, and that in case the deed of October 5th from N. E. Canfield to Mrs. Rightmire be set aside as to the creditors of R. F. Rightmire, and the property be directed to be sold, it should be sold subject to the deed of trust. The debt secured by the deed of trust, and evidenced by bond, was not yet due, and was payable in installments in the future. The debt was contracted and the trust executed in good faith, the payments had been kept paid up according to the contract, and it was error to decree sale for the whole amount yet unpaid, and still not due. "Where the owner of real estate has executed a valid deed of trust upon the same to secure the payment of a loan (which is evidenced by note or bond) contracted to be paid in installments, which have not yet matured, when a creditor obtains a judgment against the grantor in said trust deed, and proceeds to enforce his judgment lien in equity, he can only subject the equity of redemption; and the court has no power to change the terms and conditions of the deed of trust, as to the maturity of the loan thereby secured." *Wise* v. *Taylor,* 44 W. Va. 492, (29 S. E. 1003). As to the exception of the building and loan association to the report of the commissioner, where it is claimed that the claimant proved a balance of four hundred and twenty-eight dollars and sixty-five cents yet unpaid, while the commissioner allowed a less amount, the fact is that the record shows that the commissioner allowed a greater amount, viz. four hundred and thirty-four dollars and seventy-one cents, while the court decreed the sum of four hundred and twenty-four dollars and seventy-one cents, or three dollars and ninety-four cents less than claimed, while the commissioner allowed six dollars and six cents more than claimed. As the court did not directly pass upon the exception, and it is a mere matter of calculation, it is left open for the

circuit court to act upon it. The first lien upon the property is the trust deed of the said building and loan association, which is not yet due and payable; the second, the mechanic's lien; the third, the judgment of petitioner, Woods (being a judgment many months prior to the judgment of plaintiff); and the fourth is plaintiff's judgment. For the reasons herein given, said decree of March 13, 1897, is affirmed, except as to that part of the decree which holds that the land embraced in the deed mentioned is liable to be sold to satisfy said debts, without qualification, but the same is so modified as to hold that the said land is liable to be sold subject to the trust deed of said building and loan association; and the decree of December 4, 1897, is reversed and set aside, and the cause remanded to the circuit court of Tucker County, with directions to enter a decree of sale of the said property in accordance with the principles herein stated.

*Modified.*